**UNITED STATES DISTRICT COURT**
**EASTERN DISTICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ALETHA DILLARD**, individually, and on behalf of others similarly situated, | |
| Plaintiff, | Case No. 5:20-cv-10951 |
| v. | Hon. Judith E. Levy |
| **GM EQUITY DEVELOPMENT, LLC** and **GREEN W. MOSS**, jointly and severally, | |
| Defendants. | |

**JOINT MOTION TO APPROVE SETTLEMENT AND**
**INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Aletha Dillard and Defendants, GM Equity Development, LLC, and Green W. Moss (collectively the "Parties") have reached a settlement in this lawsuit. Accordingly, the Parties file this Joint Motion to Approve Settlement and jointly ask the Court to enter a final Order approving the settlement of this action pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), an incentive award for the named Plaintiff, and an award of Plaintiff's attorneys' fees and costs as set forth herein and outlined in the settlement agreement reached between the Parties. This motion is based on all the records and proceedings herein, and is supported by the corresponding brief.

WHEREFORE, Plaintiff and Defendants respectfully move this Court for entry of an Order (i) **GRANTING** this Motion; (ii) **APPROVING** the settlement of this matter; and (iii) **DISMISSING** this action in its entirety with prejudice and without further costs and fees.

**BRIEF IN SUPPORT OF**
**JOINT MOTION TO APPROVE SETTLEMENT**

**I.     Background and Procedural History**

This is a FLSA lawsuit brought by Plaintiff, Aletha Dillard, on behalf of herself and those similarly-situated, against Defendants GM Equity Development ("GM Equity") and Green W. Moss. *See* ECF No. 1, generally. GM Equity is a commercial cleaning company based out of Southfield, Michigan. Defendant Moss is the owner of GM Equity. Plaintiff alleges that Defendant Moss is an individual employer as defined by 29 U.S.C. § 201, *et. seq*. Defendant Moss, however, denies that he is/was an "employer" as defined by the act.

Plaintiff is a former Commercial Cleaner that allegedly worked for Defendants. Plaintiff filed her Complaint in the instant matter on behalf of herself and those similarly situated on April 17, 2020. *See* ECF No. 1. Plaintiff alleges violations of the minimum and overtime wage provisions of the FLSA. *Id.* Defendants filed their Answer and Affirmative Defenses on June 29, 2020, and deny the existence of any FLSA violations. *See* ECF No. 8.

Plaintiff moved to conditionally certify the collective action on August 21, 2020. *See* ECF No. 9. The Court Granted Plaintiff's Motion for Conditional Certification on September 4, 2020, and approved class notice for the following class:

> All Individuals who performed work as Commercial Cleaners for Defendants GM Equity Development, LLC and Moss on or after April 17, 2017.

ECF No. 10. Pursuant to the Court's Order, Plaintiff's counsel sent the Court-approved notice to the putative class members, and the opt-in period commenced for sixty (60) days. Ultimately, fourteen (14) Plaintiffs joined the Plaintiff and filed their consent to join this collective action. *See* Docket, generally.

Thereafter, the Parties engaged in discovery concerning the Opt-in Plaintiffs' claims for unpaid minimum and overtime wages. Ultimately, on June 3, 2021, the parties mediated this matter before Hon. James Rashid, former Chief Judge of Wayne County Circuit Court. With the assistance of Judge Rashid, the Parties reached a settlement to this collective action. The settlement negotiations were conducted in good faith, and resulting in a resolution of all claims.

## II. Claims and Defenses

The Plaintiffs' Complaint alleges violations of the minimum and overtime wage provisions of the FLSA. *See* ECF No. 1. Plaintiffs worked as commercial cleaners and performed commercial cleaning duties for Defendants. Throughout

3

the duration of their employment, Plaintiffs were required to clean hotels, restaurants and businesses for Defendant's clients. Defendants compensated its commercial cleaners on an hourly basis. Plaintiffs, however, allege three categories of FLSA violations that unite this collective action. First, Plaintiffs allege that Defendants paid them their regular rate of pay only for their overtime hours worked. Second, Plaintiff alleges that Defendants failed to pay the Plaintiffs for their travel time. Specifically, Plaintiff alleges that she was required to pick up and drop off the other commercial cleaners employed by Defendants, and drive them to and from Defendants' job sites to perform commercial cleaning services. In the same vain, the Plaintiffs allege they were required to ride along with the Plaintiff and other "drivers" to pick up and drop off Defendants' commercial cleaners, and also ride to and from various job sites to perform commercial cleaning services locally and at various sites throughout the United States. Third, Plaintiffs allege that Defendants automatically deducted a meal break each workday, regardless of whether they actually took a lunch break, and automatically deducted $10 per day for a "pick-up" fee. Plaintiffs allege that these violations resulted in sub-minimum wages, and unpaid overtime wages owed, in violation of the FLSA.

Defendants deny all liability, deny FLSA coverage, deny not paying the Plaintiffs for hours worked, deny that the "drive time" and "meal break" times are

compensable under the FLSA, and also deny the assertion that Plaintiffs were "employees" of the Defendants as defined by the FLSA. Rather, Defendant asserts as an affirmative defense, *inter alia*, that Plaintiff did not engage in commerce or the production of goods for commerce as defined by the act to extend coverage, and that the Plaintiff consented and/or contracted to the payment method provided. *See* ECF No. 8, PageId.30-31. To the extent the Court disagrees, Defendants also assert an affirmative defense that their payment practices were done in good faith, maintain that the alleged FLSA violations were not willful, and that the Plaintiffs are not entitled to the imposition of liquidated damages because Defendants had reasonable grounds for believing such acts or omissions were not a violation of any statute, order, regulation, or policy. *See* 29 U.S.C. § 260.

Despite the many claims and defenses, the Parties have reached a resolution to settle this matter with the assistance of Judge Rashid.

### III. Overview of the Settlement Terms

The proposed settlement agreement outlining the specific terms is attached as **Exhibit A**. Defendants will pay $275,000 to settle this collective action ("Settlement Fund"). $180,333.33 of the Settlement Fund constitutes payments to the Plaintiff's Class ("Plaintiff's Class Fund"), which consists of the fifteen Commercial Cleaners that have filed their consent to joint this collective action. The Plaintiff's Class Fund shall be distributed on a *pro rata* basis based on the

Plaintiffs' estimated hours worked. In addition, $3,000 will constitute the named plaintiff, Aletha Dillard's Service Award. The remaining 1/3 of the Settlement Fund, or $91,666.67 is attributed to Plaintiff's attorneys' fees and costs. The agreement also provides first class mailing of a Claim Form giving the members an opportunity to "opt-in" to the settlement agreement. The Opt-in Plaintiffs have 45 days to submit a Claim Form and release to Plaintiffs' Counsel. The parties' proposed Class Member Opt-in Settlement Agreement and Release Form is attached as **Exhibit** ("Ex.") **A** p. 7.

The Opt-in Plaintiffs' respective recovery is outlined in Exhibit A to the Settlement Agreement. *See* **Ex. A**, p. 6. Defendants deny the Plaintiffs are entitled to any damages in this matter, and claim that virtually all of the Plaintiffs grossly inflated their estimated off-the-clock hours worked in connection with their claims for unpaid wages, where most of the Opt-in Plaintiffs estimate that they worked two hours off-the-clock *each* workday. Defendants, nevertheless, desire to settle the Action and the claims asserted in the Action on the terms and conditions set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the controversies engendered by the Action.

Plaintiff's damage model, which is based on the Plaintiffs' respective estimated unpaid wages owed after factoring out Christmas and Thanksgiving

6

holiday breaks, indicates that the Plaintiffs estimate that they are owed $100,145.83 in back wages based on a two year statute of limitations from the date each Opt-in Plaintiff filed their consent to join form, or $161,591.73 in back wages based on a three year statute of limitations from the date each Opt-in Plaintiff filed their consent to join form. Here, the Settlement Agreement provides that the Plaintiffs will recover $180,333.33, which is distributed on a *pro rata basis* based on the Plaintiffs' estimated wages owed over a three year statutory period after factoring out Christmas and Thanksgiving holiday breaks. In essence, each Opt-in Plaintiff is recovering more than the amount they estimate as being owed in back wages utilizing a three-year statute of limitations after factoring out Christmas and Thanksgiving holiday breaks. The Opt-in Plaintiffs have obtained a fair and reasonable recovery.

The settlement agreement also provides that the named Plaintiff shall receive an additional $3,000 as a service award, which "are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Numerous courts have authorized such awards as "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Id.; See also Christopher Carr, et al., v. Bob Evans Farms, Inc., et. al,* No. 1:17-CV-1875, 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018) (awarding each

named Plaintiff with a $5,000 service award).

Aside from denying each of the claims asserted against them in the Collective Action, Defendants also have made representations concerning their inability to pay a judgment in this matter above and beyond the settlement, and require a payment plan to even pay the settlement funds, which is outlined in the Settlement Agreement and Claim Form. *See* **Ex. A**, pp. 1, 2, 6. In addition, Defendants have provided Plaintiff with an affidavit attesting to their financial representations, and the Settlement Agreement expressly relies on Defendant's financial representations. *Id* at pp. 1, 2. As a result of Defendants' representations as to their financial capabilities, Defendants shall make the settlement payment in eighteen equal monthly installments beginning on July 1, 2021 and ending on December 1, 2020.[1] The monthly installment payments are outlined in Exhibit A of the settlement agreement. *Id.* at p. 6. In essence, the payments to each of the Plaintiffs, the named Plaintiff's service award, and the attorneys' fees and costs are divided into eighteen (18) equal monthly installments. As a result, each of the

---

[1] The Settlement Agreement provides that Claim Forms will be mailed to the Class Members within ten (10) days of the Court's Order approving the Parties' Joint Motion to Approve the Collective Action Settlement. *Id.* at p. 2. All settlement payments due to a Class Member on a date set before the Court enters its Order Approving the Class Settlement and/or before a respective Class Member submits their Claim Form shall be paid out to the Class Member no later than ten (10) days after the Court approves the Settlement Agreement and the Class Member submits their respective Claim Form. *Id* at p. 3.

Plaintiffs will be paid in the same timely fashion as the other Plaintiffs.

The Settlement Agreement provides the Opt-in Plaintiffs with a fair and equitable result. If, however, an Opt-in Plaintiff elects to not participate in this collective action settlement, or otherwise fails to timely submit a Claim Form within the forty-five (45) day period, the Settlement Agreement provides that the non-participating Opt-in Plaintiff will not give up any of their rights to refile their unpaid wage claims against the Defendants, and that their statutory claims under the FLSA will be equitably tolled from the date of the filing of their consent to join form to the due date of their Settlement Claim Form. **Ex. A**, p. 3. As a result, non-participating Opt-in Plaintiff's *pro rata* settlement portion will revert back to the Defendants. *Id.* Accordingly, while Plaintiff believes that the Opt-in Plaintiffs will all be satisfied with the class settlement, to the extent any Opt-in Plaintiff is not satisfied, or elects to not participate in this class settlement for any reason whatsoever, the Opt-in Plaintiff will not be prejudiced or forced to participate in this class settlement, and the Defendant will also not be prejudiced in that the non-participating Opt-in Plaintiff's *pro rata* share will revert back to the Defendants.

**IV. Legal Argument**

    **A.**    **Standard of Review**

There are two ways in which FLSA collective action settlements can obtain binding releases to waive their FLSA claims. First, § 216(c) of the FLSA allows

collective action settlements and waivers to claims under the FLSA if the payment of unpaid wages by the employer is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, § 216(b) of the FLSA allows a Plaintiff in a collective action to settle and waive claims under the FLSA when a court reviews and approves a collective action settlement in a private action for back wages. *See* 29 U.S.C. § 216(b); *See also Sculte, Inc. v. Gandi*, 328 U.S. 108 (1946).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," where "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." *Diaz v. Scores Holding Co., Inc.*, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). Specifically, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA". *Arrington v. Mich. Bell Tel. Co.,* No. 10-10975 (E.D. Mich. Nov. 2, 2012) (Lawson, J.) (*citing Lynn's Food Stores, Inc.* 679 F.2d 1350, 1354). The court must find that the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Belmont v. Homes of Opportunity, Inc*., No. CV 18-10854, 2018 WL 6571145, at *1 (E.D. Mich. Dec. 13, 2018) (internal quotation marks omitted) (quoting *Lynn's Food Stores Inc.,* 679 F.2d 1350, 1355).

The Sixth Circuit has provided guidance on the factors a court may assess in determining whether a proposed class settlement is fair, reasonable, and adequate which include: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Belmont,* 2018 WL 6571145, at *1 (citing *Byers v. Care Transp., Inc.*, 2017 U.S. Dist. LEXIS 25233, at *2 (E.D. Mich. Feb. 23, 2017). The Court, however, may limit its consideration to the factors that are relevant to the instant case. *See Belmont,* 2018 WL 6571145, at *1. "If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Arrington,* No. 10-10975 (Lawson, J.) (internal quotation marks omitted) (quoting *Lynn's Food Stores Inc.,* 679 F.2d 1350, 1354). In reviewing these factors, the Court may keep in mind that there is a "strong public presumption in favor of settlement." *Pavlov v. Cont'l Cas. Co.,* No. 5:07CV2580, 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009) (internal citations omitted).

11

### B. The Settlement Is A Fair And Reasonable Resolution Of Disputed Claims.

The settlement reached between the Parties is fair and reasonable. The settlement resolves disputed claims between adverse Parties and concludes litigation that would result in costs that greatly exceed the amount agreed upon between the Parties, given the complexity of issues in this matter. For that reason, the settlement should be approved.

1. *No Risk of Fraud or Collusion*

There is no risk of fraud or collusion. The Parties were represented by experienced counsel, and the settlement was reached through arms-length negotiations in mediation before former Chief Judge of Wayne County Circuit Court, Hon. James Rashid. Therefore, this factor favors approval of settlement.

2. *The Complexity, Expense and Duration of the Case*

This FLSA collective action was initially filed in April 2020, and therefore has been in litigation for fifteen months. Various issues remain and, at a minimum, the Court will need to analyze the following issues if this matter were not resolved: 1) Whether the Plaintiffs are similarly-situated for purposes of decertification; 2) whether the Defendants employed the Plaintiffs such that the Plaintiffs were eligible employees under the FLSA, or did the Plaintiffs consent and/or contract for the payment method provided; 3) whether the Plaintiffs engaged in commerce

or in the production of goods for commerce as defined by the FLSA to provide coverage; 4) whether the Plaintiffs are entitled to liquidated damages; 5) whether a 2-year or 3-year statute of limitations applies to Plaintiff's claims; 6) whether Defendants are entitled to a good faith affirmative defense to the extent the Court deems the Plaintiffs as covered employees under the FLSA; and 7) whether personal liability for Defendant Moss applies. In addition, a jury would need to determine the number of off-the-clock hours worked by the Plaintiffs, which is vehemently disputed by the Defendants.

The parties would also have expended significant time and resources if this matter were not resolved, which includes but is not limited to depositions, dispositive motion practice, decertification motion practice, and preparation for trial. Therefore, the complexity, expense, and length of continued litigation weighs in favor of this settlement.

3. *Amount of Discovery Engaged in by the Parties*

Plaintiff has served individualized sets of interrogatories, requests for productions, and requests for admission for each of the Plaintiffs. A major hurdle in this collective action, however, is that Defendants cannot locate the appropriate pay and time records for the Plaintiffs. Plaintiff conducted discovery and reviewed the available records, which includes Plaintiffs' contemporaneous notes and text messages reflecting work, hotel receipts, bank deposits, etc. Defendant, however,

asserts that its lack of records is inconsequential since it asserts the Plaintiffs are not covered employees of the Defendants under the FLSA, either way.

Since this claim stems from alleged off-the-clock violations, pay and time records would not identify all of the alleged unpaid hours worked. Moreover, the settlement evaluation provided *supra* is based on the **Plaintiffs**' estimated unpaid hours worked, and not a defense estimate. While Defendants assert that Plaintiffs' estimated hours worked are grossly inflated, the fact that the settlement provides each of the Opt-in Plaintiffs with an amount that exceeds each of their very own respective individualized estimated back wages owed makes Defendants' lack of records inconsequential. Therefore, the parties conducted adequate discovery of the available information and reached a fair and reasonable resolution of this matter before Judge Rashid.

### 4. *The Likelihood of Success on the Merits*

Plaintiffs' likelihood of success on the merits along with any damages awarded is unclear. Defendants maintain that Plaintiffs are not covered employees under the FLSA, and if the Court were to find in Defendants' favor, Plaintiffs would not obtain any recovery. Defendants also assert that the employees grossly inflated their estimated off-the-clock hours worked, and are not owed this amount in back wages, even if the Court were to find that the Plaintiffs are covered employees of Defendants under the FLSA. Defendants also assert that the

14

Plaintiffs are not entitled to liquidated damages or willfulness damages. Regardless, Defendants assert that they are not in a position to make payments above and beyond the settlement value, and even need an eighteen month payment plan to make payments for the agreed settlement funds.

Here, each Opt-in Plaintiff is recovering more than the amount of their full back wage damages estimate utilizing a three year statute of limitations based on the respective Plaintiffs' estimated hours worked after Christmas and Thanksgiving holidays are factored out. The Opt-in Plaintiffs have obtained a fair and reasonable recovery.

### 5. *Opinion of Class Counsel and the Class Representatives*

This Court must consider the opinion of the experienced trial counselors who have evaluated the strengths of the case. *See Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 557 (S.D. Ohio 2000) (internal citations and quotation marks omitted) ("When considering a proposed settlement, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'"). Counsel for both Parties hold the opinion that settlement is in the best interest of all Parties involved, including the Opt-In Plaintiffs.

### 6. *The Reaction of Absent Class Members*

This is a collective action under the FLSA, and not a Rule 23 Class action. As a result, there are no "absent" class members. Pursuant to the FLSA, no party

15

may be bound by a settlement unless they "opt in'' to the case. 29 U.S.C. §216(b). Accordingly, no one is bound by this proposed settlement except the 15 Plaintiffs and the Defendants. Moreover, the Settlement Agreement allows the Opt-in Plaintiff to elect to not participate in this collective action settlement if they so desire. Since there are no "absent" class members being bound by this settlement, this factor also favors approval of settlement.

### 7. *The Public Interest*

The Parties' voluntary settlement agreement serves the public interest while preserving judicial resources. *See In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotation marks and citations omitted) ("…there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").

In this case, all seven factors point to a determination that the proposed settlement is "fair and reasonable". Accordingly, the Parties ask the Court to approve the settlement according to the terms of the settlement agreement and enter an Order of dismissal with prejudice, a copy of which is attached as **Exhibit B**.

### C. Plaintiff's Counsel is entitled to the requested attorneys' fees and costs.

As reflected in the settlement agreement, Plaintiffs' attorneys' fees **and** costs constitute 1/3 of the common fund. Courts within the Sixth Circuit, and throughout the country, have agreed that it is appropriate for class counsel to receive their attorneys' fees as a percentage of the common fund, when such fund is created due to their efforts. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation."); *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions") (collecting cases); *see also e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded").

Indeed, throughout the Sixth Circuit, attorneys' fees in class/collective actions typically range from 30%–50%. *See, e.g., Adams v. Standard Knitting*

*Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,377 (E.D. Tenn. Jan. 6, 1978) (35.8% award).[2]

Here, The Parties agree that 33.3 % of the common fund is a reasonable percentage for attorneys' fees **and** costs. Plaintiffs' counsel, Michael N. Hanna, Esq. has extensive experience litigating wage and hour class/collective actions, and the results in this matter warrant such an amount, given Defendants' defense and

---

[2] In addition to the aforementioned authority, case law from various federal districts across the country supports the payment of attorneys' fees as a percentage of the total common fund. *See Prasker v. Asia Five Eight LLC, et. al*, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (stating that "[i]n wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award" and awarding an attorney fee payment of $346,500 out of the common fund of $1,050,000 (33%)); *Duchesne v. Michael Cetta, Inc.,* 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving attorney fees of $1,015,000 out of a common fund of $3,150,000, or 32.2%, and stating that the "percentage of recovery" method is consistent with the trend in the Second Circuit); *Faltaous v. Johnson and Johnson, et. al.*, 2007 WL 3256833, at *10 (D.N.J. Nov. 5, 2007) ("attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions.") (internal citations omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. March 31, 2009) (awarding 33% of common fund of $3,265,000.00 as attorneys' fees); *Stahl,* 2008 WL 2267469, at *2 (M.D. Fla. 2008) (approving attorney fees of $3,744,500.00 out of a common fund of $13,137,365.00); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y May 28, 2009) (awarding attorneys' fees of 33 1/3% from common fund of $710,000.00); *Noell v. Suncruz Casinos*, 2009 WL 541329, at *1 (M.D. Fla. March 4, 2009); *Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (M.D. Fla. August 20, 2008) (awarding 32.25% of the common fund as attorneys' fees); *Kimmel et al., v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV-WEJ, Docs. 69, 70 (N.D. Ga. Nov. 4, 2010) (approving common fund class settlement on behalf of class of construction superintendents).

the results obtained on the Plaintiffs' behalf.[3]

Plaintiff's counsel effectively and efficiently resolved this matter without causing Defendants' counsel to expend additional time defending it, which would have increased Defendants' investment in the defense of the case and potentially decrease the settlement funds available to the settlement class. Defendants' counsel asserted defenses to Plaintiffs' claims; defenses which could have presented a *total defense* to the claims at issue in this litigation. Despite these potential defenses, Plaintiffs' counsel pursued Plaintiffs' claims and successfully negotiated a favorable settlement in mediation before Judge Rashid. Plaintiff and the class members have all benefited from Plaintiffs' counsel's efforts. All these factors warrant that attorneys' fees and costs in this matter be calculated at 33.3% of the common fund claimed by settlement class members. The Parties agree this

---

[3] Mr. Hanna is an Equity Shareholder at the national law firm of Morgan & Morgan, P.A., and leads the firm's Michigan office. He has represented thousands of clients as lead counsel or co-lead counsel in wage and hour class and/or collective action cases in multiple states and venues across the United States, including the representation of more than 3,400 class members in one of the largest nationwide FLSA collective actions. *See Kutzback v. LMS Intellibound, LLC*, 301 F. Supp. 3d 807 (W.D. Tenn. 2018); *See also Daoust v. Maru Rest., LLC*, 2019 WL 2866490 (E.D. Mich. July 3, 2019); *Adams v. Gilead Group, LLC,* 280 F. Supp. 3d 1358 (M.D. Fla. 2017); *Simmons v. Mathis Tire & Auto Service, Inc.*, 2015 WL 5008220 (W.D. Tenn. Aug. 20, 2015); *Kidd v. Mathis Tire & Auto Service, Inc.*, 2014 WL 4923004 (W.D. Tenn. Sept. 18, 2014); *Leverett v. Primestar Painting, Inc. et. al.*, 2018 WL 3013660 (E.D. Mich. June 14, 2018); *Kamin, et. al. v. R.K.J., et. al.*, Case No. 18-CV-11137 (E.D. Mich.); *Gregg v. Simon Brothers*, *Inc., et. al.*, 1:19-CV-00513 (W.D. Mich.).

is a fair and reasonable amount to be allocated for fees.

## V. CONCLUSION

The Parties agree that the settlement, the terms of which are set forth in **Exhibit A**, is a fair and reasonable resolution of a *bona fide* FLSA dispute. As such, the Parties jointly request that this Court approve the settlement and enter the order attached hereto as **Exhibit B**.

WHEREFORE, Plaintiffs and Defendants respectfully move this Court for entry of an Order (i) Granting this Motion; (ii) approving the settlement of this matter; and (iii) Dismissing this action in its entirety with prejudice and without further costs and fees.

Respectfully submitted this 9th day of July, 2021,

| | |
|---|---|
| /s/ *Michael N. Hanna* | /s/Jeffery A. Taylor (with consent) |
| MICHAEL N. HANNA (P81463) | Jeffery A. Taylor |
| MORGAN & MORGAN, P.A. | Jeffery A. Taylor & Associates PLLC |
| 2000 Town Center, Suite 1900 | 13335 15 Mile Rd. #222 |
| Southfield, MI 48075 | Sterling Heights, MI 48312 |
| (313) 739-1950 | (586) 274-4568 |
| mhanna@forthepeople.com | jtlaw@mac.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |